UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN

CONTINENTAL CAFE, LLC, d/b/a
CONTINENTAL CANTEEN, d/b/a
CONTINENTAL SERVICES,

      Plaintiff,

-vs-

AVANTI MARKETS, INC., and
INGENICO GROUP,

      Defendants.

Case No. 2:19-cv-11283-GCS-DRG
Hon. George Caram Steeh

**FIRST AMENDED
COMPLAINT**

_____

HOWARD & HOWARD ATTORNEYS
By:  Miles T. Macik (P63262)
      Michelle D. Champane (P80917)
Attorneys for Plaintiff
450 West Fourth Street
Royal Oak, Michigan 48067
(248) 723-0474 / (248) 645-1568 (Fax)
mtm@h2law.com
mdc@h2law.com

_____

      Plaintiff, Continental Café, LLC d/b/a Continental Canteen d/b/a Continental

Services ("Continental"), by and through counsel and pursuant to Fed. R. Civ. P.

15(1)(B), which permits amendment of a pleading once as a matter of course

within 21 days after service of a responsive pleading, for its First Amended

Complaint against Defendants Avanti Markets, Inc. ("Avanti") and Ingenico Group

("Ingenico"), states as follows:

## INTRODUCTION

1.     This fraud, breach of contract, and breach of warranty action stems from: (1) false statements Defendant Avanti knowingly and recklessly made to Plaintiff Continental in connection with a Market System Use and Purchase Agreement contract; (2) Avanti's breaches of that same contract—most of which Avanti has expressly admitted to; and (3) Avanti's interference with Continental's business expectancies.

2.     Avanti has admitted to several breaches of and non-performance under the Market System Use and Purchase Agreement contract, and even went as far as agreeing to reimburse Continental expenses occurred as a result: "Avanti agrees to reimburse you for the losses… [w]e recognize that your business is still normalizing and we are committed to making [it] whole from this unfortunate circumstance."

3.     Continental's losses are the result of: (1) Avanti's unsecure, inadequate, and inaccurate programming; (2) material and fraudulent misrepresentations regarding program compliance; and (3) deficient and ineffective credit card readers manufactured by Defendant Ingenico Group.

## THE PARTIES

4.     Continental is a Michigan Limited Liability Company with its principal place of business located in the City of Sterling Heights, Macomb County, Michigan.

Continental is in the business of providing dining, vending, and food management services to its customers, including self-serve marketplaces ("Marketplaces").

5.      Upon information and belief, Avanti is a Washington Corporation with its principal place of business in Tukwila, Washington.  Avanti conducts business throughout the United States, including business in the State of Michigan.  Avanti is in the business of developing and selling a market system which uses an electronic self-checkout register for product sales.

6.      Upon information and belief, Ingenico is an international corporation with its United States headquarters located in Alpharetta, Georgia.  Ingenico conducts business throughout the United States and in the State of Michigan.  Ingenico is in the business of manufacturing and selling payment processing systems, including payment terminals and credit card swipe hardware.

**JURISDICTION AND VENUE**

7.      None of Continental's Members are residents of the states of Washington or Georgia, and based on all information presently known to Continental, this dispute is between citizens of different states.

8.      This Court has subject matter jurisdiction over this dispute pursuant to 28  U.S.C.§ 1332 by virtue of diversity of citizenship and an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

3

9.      Venue is appropriate in this District pursuant to 28 U.S.C. § 139 because the occurrences giving rise to this action took place in the Eastern District of Michigan and all parties regularly conduct business in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

10.     Continental re-alleges and incorporates each and every allegation of this Complaint as if set forth herein.

11.     This case involves Continental's "Market Twenty 4 Seven" business model, which is predicated on providing fast and efficient food services to customers.  This business model allows customers to purchase various lunch or snack food items by proceeding through a self-checkout kiosk.  The purpose of this business model is to provide an easy, efficient, user-friendly food marketplace and minimize the amount of time customers spend in line waiting for food to be prepared or waiting in line to purchase the food.

12.     The majority of Continental's customers pay with either debit or credit cards.  For these reasons, the speed, efficiency and security of any credit card reader used by Continental in its Marketplaces are critical to Continental's business model and success. Continental made their business model and these needs known to Avanti prior to the execution of any agreement between the parties.

4

13.    Based on Continental's business model and needs, Avanti made the following representations to Continental:

     a.  That it could provide a quick and efficient self-checkout system based on Continental's business needs;

     b.  That this self-checkout system would be safe and secure from hacking;

     c.  That this self-checkout system would track Continental's inventories, pricing, products, reporting sales data, gross sales,  and other information; and

     d.  That this system would be PCI compliant pursuant to industry standards.

*The Agreement.*

14.    On or about June 1, 2011, in reliance on Avanti's representations, Continental entered into a Market System Use and Purchase Agreement (the "Agreement") with Avanti.  (**Ex. A** – Agreement.)

15.    In the Agreement, Avanti agreed to provide Continental with a self-checkout marketplace system (the "System" or "Systems"), for use in Continental's Marketplaces.

16.    Avanti made numerous representations, both before and after the execution of the Agreement, that the System was PCI compliant and certified by the PCI Security Standards Council.

17.     The System, as defined in the Agreement, included both hardware—the physical components of each self-checkout unit, and software—the computer program provided by Avanti in order for each unit to operate and function.   (**Ex. A ¶ 1.**)

18.     The software "Program" as defined in the Agreement was a customized, proprietary computer program which monitored and provided reporting on the functionality of the System, recording transactions made on each kiosk system, and assist in the management of Continental's inventories, pricing, and products.  Avanti represented and contracted that the Program would function as follows:

**Program Functionality on the Kiosk Hardware**
- Home screen
  - Displays multimedia commercial messages when not in use
  - My Market Card button
  - My Order button
- Check-out process
  - Scan product to start cart
  - Basic tax calculation
  - Choose method of payment
    - Credit card
    - Market card
  - Optional receipt print
- My Market Card
  - Create a new Market Card account
  - Add dollars to Market Card account
- My Order
  - Scan product
  - Choose non-scan able item

**Program Functionality from the web**
- Administer the self checkout register from any networked computer with proper ID and password
- Manage location information
- Manage products
- Manage products by location
- Manage inventory
- Manage Accounts and Market cards
- Manage tax rates
- Reports
  - Sales reports
  - Usage reports
  - Suggested orders
  - Inventory reports

(**Ex. A** at Annex B).

19.     The "Hardware" as defined in the Agreement included "registers, graphic elements, security system, *and* such other equipment as may be selected of designated by Avanti."  (**Ex. A** ¶ 1(a)) (emphasis supplied).

20.     The Agreement provided Avanti with the exclusive right to "change" any Hardware components from time to time, without Continental's approval or consent, including the right to add or replace certain Hardware "components, brands or models as Avanti deems appropriate for use with the System."  (**Ex. A** ¶ 2.)

21.     Under the Agreement, Continental was required to purchase all Hardware for the System from Avanti and only Avanti. (**Ex. A** ¶ 3.)

22.     In exchange, and as part of the Agreement, Avanti expressly agreed to assign any and all warranties between Avanti (as buyer) and its suppliers, like Ingenico (as seller), for the Hardware provided by Avanti to Continental.

23.     Annex E to the agreement expressly provides: "All Hardware warranties are assigned to the Customer." (**Ex. A** at Annex E.)

24.     The Agreement further provides that the Hardware is covered by the warranty information contained Annex H (**Ex. A** ¶ 3), which states:

Hardware Supplier hereby warrants that each component manufactured or supplied directly by Supplier will be free of defects in material and workmanship for a period of twelve months following the date of the invoice or shipment, whichever occurs first (the "Warranty Period"). . . . the Buyer shall notify the Supplier within ten business days of the transfer of title of any non-conformity, including: missing components or elements, peripherals or pieces or any non-conforming components or elements, peripherals or pieces.  After such time has lapsed, Buyer agrees that their order has been accepted and Supplier shall not be responsible for any further obligation to provide conforming or replacement components except as provided by the terms contained in the Supplier's warranty. . . Supplier shall be responsible for all liability injury to persons or property, damages, claims and expenses arising from the use of the equipment/supplies which are attributable to the negligent actions, or misconduct of the Supplier." (**Ex. A** at Annex H.)

25.    In addition, Avanti agreed to provide the following support to Continental with respect to the System and its functionality:

Avanti shall use commercially-reasonable efforts to maintain the Program in operating condition during the term of this Agreement. . . Avanti will facilitate repairs to all Hardware Components purchased by Customer through Avanti by serving as Customer's agent for the repair (at Customer's cost) or defective or damaged Hardware by the manufacturer or other qualified service provider.  All Hardware warranties are assigned to the Customer. (**Ex. A** at Annex E.)

26.    Continental has fully performed its obligations under the Agreement, by making all required payments to Avanti and by accepting and paying Avanti for the original "Systems" provided by Avanti and any and all replacement Hardware provided at Avanti's direction or request.

*The Original Systems Operate At A 93% Success Rate, But Fail To Accurately Record Sales, Are Not PCI Compliant, And Susceptible To Security Breach.*

27.     Avanti provided Continental with over 100 marketplace Systems in July 2017, which were installed and implemented throughout the State of Michigan for various Continental customers.

28.     From the initial installation of the Systems (approx. 2011) through July 2017, the Systems functioned and operated at a 93% success rate.   In other words, customers: (1) scanned their food product, (2) swiped their credit card to pay for the product, and (3) the credit card transaction processed on the first swipe 93% of the time.

29.     This effective rate was consistent with Avanti's original representations to Continental regarding the functionality and performance of the Systems, and established a standard of performance between the parties relating to System performance under the Agreement.

30.     However, unbeknownst to Continental, the Program installed on the Systems failed to accurately record sales reports and usage reports.

31.     Upon information and belief, without accurate sales and usage data, Avanti failed to correctly pay Continental for the sales transactions that occurred on the Systems.

32.    Furthermore, from the outset of the initial installation in 2011, the software or "Program" provided by Avanti was insecure, and subject to hacking and malware attacks.

33.    Upon information and belief, Avanti's Systems were not PCI compliant, despite Avanti's numerous representations to the contrary.

34.    Upon information and belief, and unbeknownst to Continental, Avanti was falsifying PCI compliance certificates for its Systems.  In order to achieve PCI compliance, the Systems had to operate with certain secured socket layers (SSLs) "turned on". However, Avanti's Systems were unable to function properly with SSLs turned on.  So, Avanti routinely "turned on" the System SSLs for a brief period of time in order to pass a PCI compliance test and achieve a PCI compliance certificate.  Once they obtained a PCI compliance certificate, Avanti would then immediately "turn off" the SSLs in order to get the Systems to function and perform as promised in the Agreement.

35.    These actions by Avanti made the Systems susceptible to hacking, malware attacks, and security breaches, and put Continental's customers' sensitive financial information at risk.

*The Ingenico Devices – Take 1.*

36.    At the end of May 2017, at Avanti's request, Continental began testing Ingenico card reading devices (the "Ingenico Devices") provided by Ingenico to

replace the original System card readers.  Continental installed these devices in place of the original System card readers in four locations and in early June 2017, installed the Ingenico Devices in three more locations.

37.    On or about June 7, 2017, Avanti was made aware that the Ingenico Devices were substantially deficient in capturing swipes.  The Ingenico Devices failed to read 23% of customers' swipes, compared to an average of 7% with the previous System card reader.  Avanti was made aware that customers were either leaving the food or taking the food without paying due to the failure of the Ingenico Device to capture the customer's credit card information.

38.    On or about June 12, 2017, Continental advised Avanti that it was stopping the transition to the Ingenico Devices until the error rate was no worse than what it currently expected.

*The July 2017 Malware Attack.*

39.    In July 2017, Avanti's kiosks were compromised by a malware attack. All Systems sold to Continental were impacted and/or breached as part of the malware attack.  (**Ex. B** – Avanti Press Release.)  As a result, the personal banking and financial information of Continental's customers was compromised.  *Id.*

40.    The attack occurred because the Systems were not PCI compliant as represented by Avanti, and because of Avanti's failure to install and maintain sufficient Programs and Hardware on the Systems.

41.     In response to the malware attack, Avanti initially "shut down payment processing" at some of its kiosks, including the Systems sold to Continental, so that Avanti could allegedly "purge impacted systems of any malware from the attack and take steps to substantially minimize the risk of a data compromise in the future." (**Ex. B**.)

42.     As a result of the malware attack and the above referenced shut down, Continental incurred substantial financial damages.  (**Ex. C** – October 4, 2017 Letter to Avanti.)  Continental department leaders, legal, IT, Regional Business managers, and other internal staff were required to dedicate a significant amount of time engaging and seeking advice from professionals, preparing communications to Continental's affected clients, fielding questions, and mobilizing teams to manage client matters.   (**Ex. C**.)

43.     As a result of the malware attack and the above referenced shut down, Continental was also forced to dedicate significant time managing the breach that it could have otherwise spent on day-to-day matters.

*The Ingenico Devices—Take 2.*

44.     Avanti, after admitting responsibility for the malware attack, informed Continental that it believed the best course of action to remedy the damage from the malware attack was to replace a component of the original System—the card readers.

12

45.     Avanti then exercised its right under the Agreement to direct Continental to replace the current card readers in its Systems with readers provided by Defendant Ingenico.   (**Ex. A**; **Ex. C**.) These were the same devices that Continental advised Avanti that it was going to stop transitioning until the error rate was no worse than 7%.

46.     Under the Agreement, Continental was required to accept, install, pay for and use the Ingenico Devices and was forced to mobilize a team to replace the original System card readers with the Ingenico Devices.  (**Ex. A; Ex. C**.)

47.     Based on Avanti's representations about the security and efficiency of the Ingenico readers, Continental paid Avanti in full for the Ingenico Devices, replaced the original card readers, and installed the new Ingenico Devices into all Avanti Systems in its marketplaces.

48.     The replacement Ingenico Devices were installed into all Avanti Systems at Continental's Marketplaces by about July 10, 2017.

49.     Avanti made numerous representations that the Ingenico Devices were required for the Systems to be PCI compliant after the breach; however, upon information and belief, the new Ingenico Devices were still susceptible to Avanti's fraudulent practice of "turning off" SSLs in order to achieve a PCI compliance certificate.

50.     Shortly after installing the Ingenico Devices as mandated by Avanti, Continental learned that the Ingenico Devices were defective and failing to perform at an acceptable success rate as determined by commercially reasonable standards and/or the prior course of performance established by the original Systems.

51.     Specifically, the Ingenico Devices routinely operated at only a 70-80% success rate on the first swipe—nearly 20% less efficient than the previous System card readers.

52.     In addition, a number of Continental's customer sessions "timed out" due to consecutive unsuccessful swipes.  As a result, a significant percentage of Continental's customers either couldn't use their credit/debit cards at all with new Ingenico Devices, or the significant delay caused the customers to leave or return the Marketplace products and go elsewhere for lunch or take the products without paying.

53.     Upon information and belief, before directing Continental to use the Ingenico Devices, Avanti was aware that the Ingenico Devices required more swipes than the prior card reading devices and would be performing at a significantly lower efficiency than the standards set by the original Systems it provided, however Avanti failed to inform Continental of the same.

54.     As a result, Continental's business was deeply affected by Avanti's installation of the defective and inefficient Ingenico Devices—and—upon

14

information and belief, the Systems remain insecure.  Essentially, Continental became stuck with less-effective Systems that were susceptible to the *same* security risk as the original Systems

55.   From about May 22, 2017 to the present date, Continental's sales have decreased by 12% at the effected locations, despite Continental's history of consistent and stable growth.  (**Ex. C**.)

56.   On October 4, 2017, Continental sent a letter to Avanti advising Avanti of the continued defective nature of the Ingenico Devices and damages incurred related to the same.  (**Ex. C**.)

57.   On October 17, 2017, Continental sent a second letter to Avanti outlining the then-current damages it suffered as a result of the malware attack and defective Ingenico Devices, and demanding reimbursement for those damages. (**Ex. D** – October 17, 2017 Letter to Avanti.)

*Avanti Admits Liability and Agrees to Reimburse Continental.*

58.   In response to Continental's letters, Avanti, through its president Jim Brinton, agreed to reimburse Continental for its losses in the amount of $155,589.31 by Wednesday, November 15, 2017.  Avanti also recognized that Continental's business continued to suffer as a result of the malware attack and Ingenico Devices, and "committed to making [Continental] whole from this unfortunate circumstance." (**Ex. E** – Letter from J. Brinton to Continental).

59.     Despite numerous admissions of liability and promises to compensate Continental for its damages and losses, Avanti has failed to remit any payment to or reimburse Continental for its damages and losses due to the Ingenico Devices.

60.     On November 22, 2017, Continental, through counsel, sent Avanti a written demand for reimbursement of its then-current damages.  (**Ex. F** – November 22, 2017 Letter to Avanti.)

61.     To date, Continental has suffered more than $1,000,000 in lost sales, lost profits and damages as a result of Avanti's breaches of contract, misrepresentations, and the defective Ingenico Devices.

62.     To date, Avanti, despite its admission of breach and fault and representations that it would "make Continental whole", has failed to make any of the payments promised to Continental.

## COUNT I – FRAUD
### (Avanti Markets, Inc.)

63.     Continental re-alleges and incorporates each and every allegation of this Complaint as if set forth herein.

64.     As described in detail above, Avanti made numerous fraudulent misrepresentations to Continental, both before and after the Agreement, that the Systems were PCI compliant and secure.

65.     Avanti also fraudulently misrepresented that it was compensating Continental for sale transactions that occurred on each System, even though the

16

Systems were incapable of accurately recording the sale transactions, which resulted in inaccurate payments to Continental.

66.    Also as described above, Avanti made numerous fraudulent misrepresentations to Continental during the remediation of the malware attack and installation of the Ingenico Devices, including statements relating to Avanti's ability to meet Continental's requirements for the Systems and the efficiency of the Ingenico Devices.

67.    As detailed above, Avanti knew at the time it made these and other promises and false representations to Continental that: (1) the Systems were not, in fact, PCI compliant; (2) as a result of the inaccurate transaction reporting, Continental was not accurately compensated for the transactions that occurred on the Systems; and (3) the Ingenico Devices were inefficient, and would adversely affect Continental's sales, rendering such statements false and misleading.

68.    Continental eventually discovered that Avanti's representations regarding PCI compliance, payment for sale transactions, and the Ingenico Devices were false and misleading. The undisputed reality was that Avanti knew about, but failed to disclose, the lack of PCI compliance, inaccurate payment for sale transactions, and the inefficiency of the Ingenico Devices and the adverse effects these devices would have on the Systems, in an attempt to retain Continental's

business while simultaneously depriving Continental of the services it was entitled to receive.

69.     Avanti's egregious pattern and practice of falsehoods and omissions during contract negotiation and contract performance was part of its larger scheme to defraud Continental and convince Continental to continue the contractual relationship. Continental actually and reasonably relied on Avanti's ongoing misrepresentations in its decision to continue its relationship with Avanti despite the malware attack.

70.     Continental actually and reasonably relied on Avanti's representations regarding PCI compliance, compensation for sale transactions, and in the remediation from the malware attack and installation of the Ingenico Devices, and continued its business with Avanti based on these representations.

71.     Continental suffered damages as a result of Avanti's intentional misrepresentations and fraud in an amount of $1,000,000.

## COUNT II – FRAUDULENT MISREPRESENTATION
### (Avanti Markets, Inc.)

72.     Continental re-alleges and incorporates each and every allegation of this Complaint as if set forth herein.

73.     As described in detail above, Avanti made numerous fraudulent misrepresentations to Continental, both before and after the Agreement, that the Systems were PCI compliant and secure.

74.     Avanti also fraudulently misrepresented that it was compensating Continental for sale transactions that occurred on each System, even though the Systems were incapable of accurately recording the sale transactions, which resulted in inaccurate payments to Continental. Also as described in detail above, Avanti made numerous fraudulent misrepresentations to Continental during the remediation of the malware attack and installation of the Ingenico Devices, including statements relating to Avanti's ability to meet Continental's requirements for the Systems and the efficiency of the Ingenico Devices.

75.     As detailed above, Avanti knew at the time it made these and other false representations to Continental that: (1) the Systems were not, in fact, PCI compliant; (2) as a result of the inaccurate transaction reporting, Continental was not accurately compensated for the transactions that occurred on the Systems; and (3) the Ingenico Devices were inefficient, and would adversely affect Continental's sales, rendering such statements false and misleading.

76.     Continental actually and reasonably relied on Avanti's ongoing misrepresentations in its decision to enter into the Agreement, continue its performance under the Agreement, and continue its relationship with Avanti despite the malware attack.

77.     Continental actually and reasonably relied on Avanti's representations in the remediation from the malware attack and installation of the Ingenico Devices, and continued its business with Avanti based on these representations.

78.     Continental suffered damages as a result of Avanti's fraudulent misrepresentations in an amount in excess of $1,000,000.

## COUNT III – NEGLIGENCE
### (Avanti Markets, Inc.)

79.     Continental re-alleges and incorporates each and every allegation of this Complaint as if set forth herein.

80.     Avanti negligently maintained and/or manipulated the Systems by allowing false PCI compliance reports to be generated, which caused the Systems to appear PCI compliant, when, in fact, they were not.

81.     Avanti knew that the Systems were not PCI compliant and subject to significant security risks.

82.     Avanti also negligently failed to supervise, maintain, and/or implement a Program onto the Systems that were capable of accurately recording sale transactions, which resulted in inaccurate payments to Continental for sale transactions made on the Systems.

83.     Avanti knew that it was not accurately compensating Continental for sale transactions that occurred on the Systems as a result of the false and inaccurate reporting of the sales transactions.

84.    As a result of the malware attack, Avanti required Continental install new hardware—the Ingenico Devices—in the Systems it sold to Continental.

85.    Avanti knew that the Ingenico Devices were inefficient, and that installing the Ingenico Devices into the Systems would adversely affect Continental's business.

86.    After Continental discovered that the Ingenico Devices were defective and inefficient, Continental requested that Avanti compensate Continental for its damages incurred in installing and implementing the devices.

87.    Despite admitting liability for the same, Avanti refused to compensate Continental for its damages.

88.    Continental has incurred significant expenses in mitigating its damages as a result of: (1) the non-PCI compliant Systems; (2) inaccurate compensation for sale transactions; and (3) the malware attack and the installation of the Ingenico Devices; however, Avanti refuses to pay for the damages it caused.

89.    Avanti had a duty to: (1) supply PCI-compliant Systems to Continental; (2) accurately compensate Continental for sale transactions that occurred on the Systems; and (3) install and replace Programs and Hardware so that the System would operate as agreed in the Agreement.

90.    Avanti breached this duty when it: (1) provided Systems that were not PCI-compliant; (2) installed and maintained Program(s) that were incapable of

accurately recording sale transactions which resulted in inaccurate compensation to Continental for the same; and (3) installed the Ingenico Devices, which Avanti knew did not operate as required.

91.     Avanti's negligent conduct was the proximate cause of Continental's damages.

92.     Continental was damaged, and continues to suffer damages, by Avanti's negligent conduct.

93.     As a direct result of Avanti's negligence, Continental has suffered damages in excess of $1,000,000.

## COUNT IV – BREACH OF AGREEMENT
### (Avanti Markets, Inc.)

94.     Continental re-alleges and incorporates each and every allegation of this Complaint as if set forth herein.

95.     Continental and Avanti were parties to the Agreement, which was a valid, binding, and enforceable contract.

96.     Continental performed all of its obligations under the Agreement.

97.     Avanti breached the Agreement because Avanti: (a) committed multiple, significant errors in performing its services under the Agreement; (b) did not perform its services in a competent and professional manner, in accordance with industry standards; (c) did not devote the time, personnel, and resources necessary to perform its services; (d) did not perform its services with care and diligence

consistent with industry standards, with employees that were sufficiently experienced, properly qualified, and equipped to perform the services; (e) did not use its best efforts to assist Continental in mitigating damages following Avanti's malware breach; (f) did not use its best efforts to assist Continental in installing and implementing the Ingenico Devices; and (h) breached its various contractual representations and warranties in the Agreement.

98.     Moreover, Avanti's willful, arbitrary, and bad faith conduct, as described herein, further constituted a breach of the implied covenant of good faith and fair dealing.

99.     As a direct result of Avanti's breaches and its deliberate, intentional, willful, arbitrary, bad faith, reckless and negligent actions, Continental suffered significant damages and/or harm, including but not limited to: (a) payment for performance and corrective work; (b) damages, costs, and expenses incurred by Continental due to the malware attack and installation of the Ingenico Devices; (c) damages due to business disruption; (d) lost profits; (e) harm to Continental's reputation, goodwill, and customer relationships; and (f) additional damages to be proven at trial. Such damages are natural, highly probable consequences of Avanti's breaches of the Agreement.

## COUNT V – BREACH OF AGREEMENT TO REIMBURSE
### (Avanti Markets, Inc.)

100.    Continental re-alleges and incorporates each and every allegation of this Complaint as if set forth herein.

101.    The October 2017 Letter from Avanti, sent by and through Avanti's president Jim Brinton, wherein Avanti agreed to reimburse Continental for its then-current losses in the amount of $155,589.31, constituted a valid, binding, and enforceable agreement between Avanti and Continental.

102.    Avanti breached this agreement by failing to compensate Continental in the amount of $155,589.31, as set forth in the letter agreement.

103.    As a result of Avanti's breach of the letter agreement, Continental has suffered, and will continue to suffer damages.

## COUNT VI – PROMISSORY ESTOPPEL
### (Avanti Markets, Inc.)

104.    Continental re-alleges and incorporates each and every allegation of this Complaint as if set forth herein.

105.    Avanti's representations in the October 2017 Letter, sent by and through Avanti's president Jim Brinton, wherein Avanti agreed to reimburse Continental for its then-current losses in the amount of $155,589.31, constituted a promise to Continental.

106. Based on the representations made by Avanti in the October 2017 Letter, Continental believed that it would be reimbursed for the losses it incurred as a result of Avanti's breach of the Agreement.

107. At the time Avanti made the above promise(s) to Continental, Avanti could reasonably foresee that Continental would rely upon these promises made by Avanti, especially in deciding to continue to perform under the Agreement despite Avanti's failure to maintain and secure the Systems to protect them from a malware attack and/or failure to implement policies and procedures to safeguard against a malware attack, and despite the losses Continental suffered as a result of Avanti's conduct.

108. Continental reasonably relied, to its detriment, on the promise(s) made by Avanti, by among other things, by continuing to perform under the Agreement. Continental also expended significant amounts related to implementation of Ingenico Devices and further remediation after the breach, based on Avanti's promise to reimburse Continental for its breach-related losses.

109. Enforcement of Avanti's promises is necessary to avoid injustice, and to allow Continental to recover the additional expenses it incurred in implementing the Ingenico Devices and continuing to perform under the Agreement in reliance on the promised and remedial actions made by Avanti.

## COUNT VII – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Avanti Markets, Inc.)

110.    Continental re-alleges and incorporates each and every allegation of this Complaint as if set forth herein.

111.    Continental has contractual relationships with its customers wherein Continental agreed to provide its customers with fast and efficient food services through the implementation of a self-checkout marketplace.

112.    Avanti knew of Continental's contractual relationships with its customers.

113.    Avanti intentionally and improperly interfered with Continental's contractual relationships with its customers by: (1) misrepresenting that the Systems were PCI compliant when, in fact, they were not; (2) knowingly providing Continental with Systems that put Continental's customers at risk of exposing their confidential financial information; and (3) requiring Continental to install replacement Hardware—the Ingenico Devices—which Avanti knew were inefficient and would not meet Continental's business model.

114.    Continental has been damaged by the actions of Avanti through the loss of significant business profits.

115.    As a direct result of Avanti's tortious interference, Continental has suffered, and continues to suffer, damages in excess of $1,000,000.

## COUNT VIII – BREACH OF IMPLIED WARRANTY OF FITNESS FOR PURPOSE
### (Avanti Markets, Inc.)

116.    Continental re-alleges and incorporates each and every allegation of this Complaint as if set forth herein.

117.    The Systems are subject to the implied warranties of fitness for purpose.

118.    At the time that the parties entered into the Agreement, Avanti knew or had reason to know of the purpose for which Continental sought to use the Systems and the card-reader components of the Systems.

119.    At the time that the parties entered into the Agreement, Avanti knew or had reason to know that Continental was relying on Avanti's skill or judgment to furnish suitable goods—including goods that were PCI compliant—so that the Systems could function properly and was safeguarded against a breach or malware attack.

120.    Avanti knew or had reason to know that its conduct that caused false PCI compliance certificates to be generated made the Systems unfit for Continental's intended purpose.

121.    Avanti knew or had reason to know that its conduct which caused an inaccurate record of sale transactions and inaccurate compensation to Continental for the same made the Systems unfit for Continental's intended purpose.

122.   In replacing the System card-readers with the Ingenico Devices, Avanti was required to select components, brands or models that were "appropriate for use with the System."  (**Ex. A** ¶ 2.)

123.   Avanti knew of the particular purpose for which the Ingenico Devices would be used relative to the Systems, and knew that the Ingenico Devices were inefficient, defective, and not suitable to replace the existing credit-card readers in Systems.

124.   The PCI falsification, inaccurate payment for sale transactions, and defective Ingenico Devices breached the implied warranty of fitness for a particular purpose and damaged Continental in an amount in excess of $1,000,000.

## COUNT IX – BREACH OF EXPRESS WARRANTY
### (Avanti Markets, Inc.)

125.   Continental re-alleges and incorporates each and every allegation of this Complaint as if set forth herein.

126.   Avanti made certain express warranties to Continental, including but not limited to the following:

   a.   That the Systems would operate as a functional market system that uses an electronic self-checkout register for product sales;

   b.   That the Systems were PCI compliant;

   c.   That Continental would be accurately compensated for sale transactions that occurred on the Systems;

d. That the Hardware used in the Systems would be free of defects in material and workmanship;

e. That any defects or nonconformities in Hardware and Programs would be cured.

127.    The Systems were not PCI compliant, nor were they capable of accurately recording sale transactions, which caused the Systems to fail to perform as warranted and represented.  Moreover, the Ingenico Devices caused the Systems to fail to perform as warranted and represented, as described in detail above.

128.    Continental has given Avanti reasonable opportunities to cure the defects caused by the lack of PCI compliance, inaccurate and/or insufficient Programs, and installation of the Ingenico Devices, and make the Systems fit for their intended and warranted purpose; however, Avanti has refused to do so within a reasonable time and without costs to Avanti.

129.    As a direct result various breaches of express warranties in the Agreement, Continental has suffered damages in excess of $1,000,000.

## COUNT X - BREACH OF IMPLIED WARRANTY
## OF MERCHANTABILITY
### (Ingenico Group)

130.    Continental re-alleges and incorporates each and every allegation of this Complaint as if set forth herein.

131.    Ingenico is a manufacturer and merchant of credit card swiping hardware, to be used in the reading and charging of credit cards.

132.    Ingenico knew or had reason to know that the Ingenico Devices were intended to be used by its customers, including Avanti, for the purpose of providing effective and efficient card-reading services.

133.    The defective and inefficient Ingenico Devices that Ingenico manufactured and produced for Avanti failed to operate without defect.

134.    The defective Ingenico Devices that Ingenico manufactured and produced for Avanti were not of fair or average quality.

135.    The defective Ingenico Devices that that Ingenico manufactured and produced for Avanti were not fit for the ordinary purposes for which such goods are used in point of sale transactions.

136.    The defective Ingenico Devices that that Ingenico manufactured and produced for Avanti breached the implied warranty of merchantability and damaged Continental in an amount in excess of $1,000,000.

137.    As expressly provided in the Agreement, Avanti assigned its Warranty from Ingenico for the Ingenico readers to Continental.

**PRAYER FOR MONETARY RELIEF**

WHEREFORE, Continental respectfully requests this Court enter judgment in its favor and against Defendants for damages in an amount to be determined in excess of $1,000,000, together with all allowable costs, reasonable attorney fees and interest, and any other or alternative relief that this Court deems equitable and just.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS

By: */s/ Michelle D. Champane*
       Miles T. Macik (P63262)
       Michelle D. Champane (P80917)
       Attorneys for Plaintiff
       450 West Fourth Street
       Royal Oak, MI 48067
       (248) 723-0474
       (248) 645-1568 Fax
       mtm@h2law.com
       mdc@h2law.com

Dated:  July 23, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2019, I electronically filed *Plaintiff's First Amended Complaint* and this *Certificate of Service* with the Clerk of the Court using the ECF system, which will send notification of such filing to those registered persons/members of the Court's ECF system who are participants in these proceedings.

*/s/ Michelle D. Champane*
Michelle D. Champane (P80917)

4833-6256-9885, v. 1